

September 30, 2022

Hon. John P. Cronan, U.S.D.J.
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

By Electronic Filing.

    Re:    <u>Curran-Groome v. City of New York</u>, 22-cv-00710

Dear Judge Cronan:

    I am co-counsel for Plaintiff in this matter. I write to provide the parties' Case Management Plan/Rule 26(f) Report ("CMP") — as well as to provide discussion and authority for (1) the small departures from the standard time frames and (2) the outstanding disputes about 26(f) issues.

    The parties, following an unsuccessful 1983 Plan mediation, held a 26(f) conference and have been diligently trying to resolve relevant disputes over several hours of meeting and conferring. The parties have submitted the attached CMP, with minor deviations that the parties are in agreement on. Specifically, because of the nature of the 2020 protests, as the City itself put it, identifying officers during the 2020 protests has presented "unprecedented challenges in investigating [incidents] particularly around the identification of officers due to the failure to follow proper protocols, officers covering their names and shield, officers wearing protective equipment that did not belong to them, the lack of proper use of body worn cameras, as well as incomplete and severely delayed paperwork." NYC Civilian Complaint Review Bd., *CCRB Protest Data Snapshot* (May 11, 2022).[1]

    At present, neither party has the information sufficient to identify the critical John and Jane Doe Defendants — and based on the non-confidential documents disclosed in the Consolidated Actions (defined/explained below), no party will be in a position to identify those Does without depositions. The parties, however, dispute the appropriate length of that extension. Defendants say "The best we can do is agree to amend to add parties until the end of January 2023." However, since depositions will not be done by that point, Plaintiff's proposed ¶ 4 of the proposed CMP sets a deadline for joinder that allows time for such depositions. Defendants apparently

    Similarly, given the scope of relevant discovery and the wide-ranging issues with document storage and preservation given the schedules officers were working during the summer of 2020, four months is not a realistic time frame to complete discovery. And Plaintiff's consent to the six-month

---

[1] *Available at* https://www1.nyc.gov/assets/ccrb/downloads/pdf/policy_pdf/issue_based/Protest_Data_Snapshot_May_2022.pdf



deadline is tentative because if *Monell* discovery is not coordinated (as described below) in this case, Plaintiffs will need substantially more time to take discovery on their *Monell* claims. Indeed, it has taken more than a year and a half on the consolidated docket discussed below to litigate identical *Monell* claims to those presented here, and that is with substantially greater resources to review the historical documents making up the basis of Plaintiffs' claims on both sides. And, presumably, given the volume of relevant discovery for Plaintiffs' *Monell* claims, it will take Defense Counsel longer than ordinary to gather, review, and disclose historical relevant materials.

With that, what follows are the parties' position on the issue of coordination.

## *Discussion and Plaintiffs' Position*

**1. Background.**

As Your Honor is aware, and by way of brief background as to this outstanding issue, this matter is one of many that have been filed in the Eastern and Southern Districts of New York arising from New York City Police Department ("NYPD") conduct during the Summer 2020 protests for Black lives, during which NYPD members assaulted, arrested, detained for excessive periods of time in unsafe conditions, and falsely and maliciously prosecuted protestors. Specifically, this case concerns the "kettle" and arrests at a protest in the Mott Haven neighborhood of the Bronx. As video and radio runs show, the NYPD — starting about an hour prior to the curfew — began attempts to corral a group of protesters into a confined space. After one failed attempt, before the curfew began, NYPD was able to surround protesters on all sides. They held the protesters there until the curfew passed, and then assaulted and arrested them. The brutality was unparalleled. Officers, including an officer who was — until he retired two weeks ago – *fifty-two* substantiated charges and a recommendation for termination,[2] climbed on top of cars and wildly swing their batons at the crowd. Protesters' skulls were cracked, many were left bleeding, and then they were left sitting on the street while officers could not find a place that could process all the arrests.

Discovery that covers the events at Mott Haven has been ongoing for nearly two years in a set of flagship cases, including an action brought by the New York State Attorney General on behalf of the People of the State of New York and several putative class actions raising certain *Monell* claims essentially identical to those as Plaintiffs do here, which have been consolidated for pre-trial purposes under the In re New York City Policing During Summer 2020 Demonstrations docket at 20-cv-8924 (CM)(GWG) before Hon. Colleen McMahon and Hon. Gabriel W. Gorenstein (the "Consolidated Actions"). Mott Haven is the sole focus of at least two different suits in the Consolidated Actions, while it is at least a major focal point in every single other one. It is no exaggeration to say that, based on the Consolidated Actions alone, Mott Haven may be the most litigated single protest in the history of the City of New York.

Finally, the City's construction of the Court's rules to obviate their need to even submit a position until after the initial pretrial conference thwarts the purpose of those rules, and of Rule 26(f) and the initial pretrial conference process more generally. Moreover, it ignores the effect of the Court's order at Dkt. No. 39. The Court directed "The parties shall submit their proposed case

---

[2] *See* Yoav Gonen, *Most-Complained-About NYPD Cop Retires, Avoiding Penalties,* THE CITY (Sept. 19, 2022).

Page 2 of 7

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



management plan and any accompanying requests by September 30, 2022." Dkt. No. 39.  Defendants declined to do so, so any such requests — or opposition to such requests — is waived.  Defendants consented to a letter that set September 30, 2022 as the date after which the parties had "hammer[ed] out their positions" and therefore could submit the CMP "and *any* related letters or motions." Dkt. No. 38 (emphasis added).  And Defendants have had near verbatim the text of this letter since September 23 (to say nothing of the number of times this has been litigated by the City).  At this stage, their silence waives opposition.

### 2. Coordination and Argument

Given all of that, avoiding doubling all of the discovery about Mott Haven — and the related policies and history — only makes sense.  Coordination is the way — as set out below — that nearly a dozen judges have found appropriate to do so.  And such coordination is necessary because of, among other things, the sheer volume of historical material that must be reviewed.  As Judge McMahon explained, the thrust of (one of the) well-pled *Monell* claim(s) in this case is this:

> the treatment of protesters was a result of the City's failure to confront a decades-long pattern of police misconduct during similar protests; the City turned a blind eye to unconstitutional policing during protests; and the NYPD failed adequately to train, supervise and discipline its officers in constitutionally-sound de-escalation tactics for policing protests. As a result, there has long been a widespread pattern and practice of police misconduct during First Amendment protected protests.

*In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383, 394 (SDNY 2021).  A model order, which has been entered in nearly all the cases (some ordered coordination less formally — none imposed any of the restrictions Defendants have asked for, nor do they appear to have any authority for such restrictions), is attached as **Exhibit 1**.

With one out of district exception (*see* note 2 below), that turned not on the wisdom of coordination, but a question of multi-district litigation, coordinated discovery has been ordered in every single other, non-consolidated case with significant overlap arising from NYPD protest responses in 2020 where a party has asked.  *See* **Exhibit 2** (Order in *Casablanca-Torres v. City of New York, et al.*, 21-cv-10832 (LAK)(JLC) and *Britvec, et al. v. City of New York, et al.*, 21-cv-10759 (LAK)(KNF) (*Britvec* Dkt. 18)); **Exhibits 3-4**, (Two Orders in *Rodriguez, et al., v. The City of New York, et al.*, 21 CV 10815 (PKC) (Dkt. Nos. 14 and 17)); **Exhibit 5** (Order in *Hernandez et al. v. City of New York, et al.*, 21 Civ. 7406 (CM)(GWG) (Dkt. 333 in the Consolidated Actions)); **Exhibit 6** (Order in *Alyssa Sukana, et al. v. City of New York, et al.*, 21-cv-10899 (LJL)(BCM) (Dkt. 22)); **Exhibit 7** (Order in *Sharma v. City of New York, Case No. 21-cv-10892* (ER)(BCM) (Dkt. 26)); **Exhibit 8** (Order in *Margolies v. City of New York*, 21-cv-10839 (PKC) (Jul. 1, 2022 Minute Order)); **Exhibit 9** (Order in *Acosta v. City of New York, et al.*, 21-cv-00576 (FB) (RER) (August 11, 2022 Minute Order)); **Exhibit 10** (form of order and Minute Order So-Ordering it in *Payamps v. City of New York et al.*, 22-cv-563(AMD)(VMS)).  Plaintiffs respectfully submit that this proposal would serve the interest of judicial economy and efficiency by ensuring the coordination of discovery between the Consolidated Actions in NYC Summer 2020 protest cases and the instant case, and it is against this backdrop that Plaintiff seeks coordination here.

COHEN&GREEN    Page 3 of 7

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t: (929) 888.9480  ·  f: (929) 888.9457  ·  FemmeLaw.com



  This time around, Defendants have not *exactly* opposed coordination, but instead demanded concessions to the form of coordination that basically added up to Plaintiff waiving *Monell* discovery and not getting it — along with opposing adopting the protective order and any decisions from the Consolidated Actions, which would prevent use of the documents from the Consolidate Actions in the first place. They have also opposed coordinating depositions in **any** fashion. That causes no end of mischief. And what they term "broad coordination" really means "any coordination that allows Plaintiff to use *Monell* discovery from the Consolidated Actions." In *Sukana*, cited below, Judge Liman rejected exactly this tack. As an example of the problems this causes, consider the deposition of former Chief of Department Terence Monahan, and his disciplinary records. As Judge McMahon explained, "the NYPD failed to discipline then-Deputy Chief Monahan after he directed [unconstitutional activity] 2004 RNC protest" and "instead, he was eventually promoted to Chief of Department, and … directed the use of the same strategies against the Mott Haven protesters on June 4, 2020." *In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383, 405 (SDNY 2021). That is, then-Chief Monahan personally directed the actions at issue in this case. His deposition will, of course, be essential to any Mott Haven case — as will related documents. And unless Plaintiff can attend and ask the two or three follow-up questions that directly pertain to her, she will have to depose him alone. And if the Court cannot incorporate the confidentiality order and related redactions and orders, the City will have to literally re-collect and produce hundreds if not thousands of records. Inexplicably, that appears to be what the City wants.

  A coordination order in the form proposed would require the parties to coordinate discovery in this matter with the ongoing discovery in the Consolidated Actions, while avoiding duplicative discovery wherever possible. If discovery is coordinated as Plaintiff is proposing, rather than re-producing the vast majority, if not all, of the documentary evidence relevant to Plaintiff's *Monell* claims, the parties could rely on the discovery in the Consolidated Actions with respect to those claims. Requiring the parties to coordinate discovery, including line officer and high-level depositions, that is ongoing in the Consolidated Actions where there is overlap would increase economy and efficiency for all parties, as well as the Court – particularly given the close, time-consuming, and ongoing supervision the contentious litigation in the Consolidated Actions has demanded.

  Representing a near uniform (if not just plain uniform) experience of this issue, at a Pre-Trial Conference on August 10, 2022, at which both Plaintiff's Counsel and Defendants' Counsel in this matter were present, Judge Reyes stated that the Court did not understand the City's objection to coordination, as the proposal would clearly "save significant time and expense," before ruling in Plaintiff's favor and ordering coordination.[3] Indeed, this choice to coordinate appears to reflect a near-global approach to cases about the protests during the summer of 2020 that will continue to be filed — as Judge McMahon recently described it:

---

[3] The sole Court to reject coordination — Judge Bulsara in the Eastern District — did not do so because coordination did not make sense. Indeed, the Court expressed significant confusion over the City's objections, and urged them to reconsider their position, and warned that the position would likely ultimately lead to countless unnecessary hours of City attorney time. Rather, he did so because he believed the Court lacked the power to order coordination across district lines over an objection (at least, without an initial reference to and decision by the MDL Panel).

COHEN&GREEN       Page 4 of 7

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



> "[Initially,] this court was hoping that a sentinel case (most likely the parens patriae action brought by New York State Attorney General Leticia James) could be readied for trial with a year[.] The idea was to prevent a lot of 'do over' discovery… In the intervening year, much has happened … [V]arious individuals who … are putative members of one or more plaintiff classes in the class actions that are among the consolidated cases (Sow, Sierra) are choosing to file their own lawsuits; some of those cases have been wheeled out to other judges of the court. The assigned judges in those cases have agreed to coordinate discovery with the discovery that is being overseen by Judge Gorenstein. As those plaintiffs have joined the party, they have begun participating in discovery."

Consolidated Actions, Dkt. No. 538 at 2 (**Exhibit 6**). Or, put more simply, so far, coordinating discovery has been an effective choice, and reflects the considered judgment of the Judges handling the Consolidated Actions as well as those presiding over significantly related cases. Here too, Defendants have been unable to articulate any burden that would ever accrue in the real world — or how their path would not lead to exactly the kind of "do over" discovery Judge McMahon and others have been working tireless to avoid. Rather, Defendants' objection appears to be abstract — particularly since, as Judge Liman repeatedly pointed out to the City in *Sukana*, any use of documents (putting aside that they are City/NYPD documents in the first place, making the objection somewhat odd) from the Consolidated Actions would be preceded by disclosure, whether in a pre-trial stipulation or in summary judgment papers.

With respect to discovery that relates specifically to Plaintiff's experiences, to the extent such discovery has already been exchanged in the Consolidated Actions, the parties could simply identify any such discovery in their discovery responses in this case utilizing the date(s) of production and Bates Numbers in the Consolidated Action, rather than re-producing it in this action. To the extent discovery in the Consolidated Actions that is relevant to Plaintiff's experiences has not yet taken place, requiring the parties to coordinate – so that the discovery is only taken once in the Consolidated Actions, covering all of the areas relevant to the Consolidated Actions as well as actions such as this one in the context of the Consolidated Actions, wherever possible – is the approach most judges supervising these cases has taken and, Plaintiffs submit, it is the approach that makes the most sense. If the Court grants Plaintiff's request to allow discovery, including *Monell* discovery, in this matter to proceed in coordination with discovery in the Consolidated Actions, Plaintiff would respectfully suggest that the parties move forward with discovery about Plaintiff's claims here in accordance with the deadlines set at the initial conference, while, at the same time, making use of the discovery that has been, and will be, conducted, in the Consolidated Actions. Coordination has been consistently ordered in the Southern District, and the overlap in parties, policies, and discoverable information in this matter support the same outcome here.

Defendants' (unmade and waived) objections in this case are not new. In unsuccessfully opposing prior requests for consolidation, Defense Counsel by the Law Department has consistently argued that an individual Assistant Corporation Counsel's unfamiliarity with the Consolidated Actions

COHEN&GREEN    Page 5 of 7

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



is prohibitive to coordination.[4] it provides no cause to prejudice Plaintiff's access to discovery or frustrate judicial economy. To the extent the sole Assistant Corporation Counsel assigned to this case is unfamiliar with this matter, that is a problem Defendants have created by not providing such access, and/or that Defense Counsel has created through the manner in which the Law Department has staffed, and the choices it has made in litigating, the Consolidated Actions and this clearly related case for many months. This Court should not allow Defendants to make staffing and resource allocation decisions that essentially keep Defense Counsel uninformed about these clearly related matters, creating burdens other staffing and resource allocation decisions would not, and prejudice Plaintiff's pursuit of the claims in this case.

### 3. Conclusion

In short — as Judge Castel put it — Defendants' offered reasoning for rejecting coordination ultimately only "contrary to its intended purpose…, highlights the wisdom of coordination" **Exhibit 4** at 1 (Order, ECF No. 17, *Rodriguez v. City of New York*, 21-cv-10815 (PKC)).  As Judge Gorenstein — assigned as the Magistrate Judge here and in the Consolidated Actions — knows very well, re-doing the discovery from the Consolidated Actions is just not possible.  It has resulted, so far, in double digit sanctions against the City, the firing of the City's senior ACC, and more than a year of delay.  It is a puzzle why the City wants to do all that again.  We ask that the Court adopt the proposed order attached as **Exhibit 1**.

### Defendants' Position

Defendants oppose the broad coordination as currently proposed, although do not oppose coordination generally, and note that they will submit an opposition within 3 business days in accordance with the Court's individual rules of practices.

The parties all thank the Court for its attention to this matter.

Respectfully submitted,

/s/
_____

J. Remy Green
   *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:

---

[4] This position amounts to, in essence, a claim that an individual ACC would need to become familiar with the docket in the consolidated cases.  This claim, as numerous judges have pointed out, fails for two reasons: (1) there is no stage at the case where that is actually true (because summary judgment will come first on the consolidated docket, and at trial, each party will designate the relevant exhibits) and (2) the City's choice to inefficiently staff the litigation growing out of the summer of 2020 should not prejudice plaintiffs or the Court in forcing serial litigation of identical issues.



Page 6 of 7

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t: (929) 888.9480  ·  f: (929) 888.9457  ·  FemmeLaw.com



All relevant parties by ECF.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com